Ayers v Mohan (2020 NY Slip Op 02283)





Ayers v Mohan


2020 NY Slip Op 02283


Decided on April 16, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 16, 2020

Renwick, J.P., Oing, Singh, Moulton, JJ.


11393 23311/13E

[*1]Duvars Ayers, et al., Plaintiffs-Respondents,
v
Avinash Mohan, M.D., et al., Defendants, Bruce Zablow, M.D., Defendant-Appellant. [And Another Action]


Heidell, Pittoni, Murphy & Bach, LLP, White Plains (Daniel S. Ratner of counsel), for appellant.
Wolf & Fuhrman LLP, Bronx (Carole R. Moskowitz of counsel), for respondents.



Order, Supreme Court, Bronx County (Joseph E. Capella, J.), entered on or about October 4, 2019, which, to the extent appealed from as limited by the briefs, denied the motion of defendant Bruce Zablow M.D. for summary judgment dismissing the medical malpractice claim against him insofar as it is based on postsurgical treatment after an October 22, 2012 procedure, unanimously affirmed, without costs.
In August 2012, Dr. Zablow, Director of Neurointerventional Radiology at Westchester Medical Center (WMC), first treated then-32-year-old plaintiff Duvars Ayers, who was incarcerated at the time. In October 2012, Dr. Zablow performed surgery on plaintiff in an attempt to readdress a giant aneurysm in an artery behind plaintiff's left eye by placing a replacement stent, which proved unsuccessful. Dr. Zablow then performed a balloon occlusion test, which showed that the artery where plaintiff's aneurysm was located could be permanently blocked through occlusion. Dr. Zablow's discharge summary instructed plaintiff to follow up with him in two weeks, but plaintiff was returned to prison, and did not return to Dr. Zablow's care.
Dr. Zablow established his prima facie entitlement to judgment as a matter of law by submitting evidence showing that there was no departure from good and accepted medical practice in the postsurgical treatment of plaintiff or that any departure was not the proximate cause of the injuries alleged (see Roques v Noble, 73 AD3d 204, 206 [1st Dept 2010]). Dr. Zablow submitted the affirmation from a neurological surgeon, who opined that Dr. Zablow properly discharged plaintiff back to prison and that because Dr. Zablow treated plaintiff only as a consulting physician, it was the responsibility of plaintiff's primary medical team to arrange for further treatment of his aneurysm once plaintiff had decided how to proceed.
In opposition, plaintiff's expert opined that Dr. Zablow departed from the standard of care when he failed to arrange for plaintiff to have a neurological consult and failed to discuss with plaintiff the results of the balloon occlusion test and the possibility of occluding the carotid artery to address the aneurysm. The conflicting expert opinions raised issues of fact and credibility that cannot be resolved on a motion for summary judgment (see Cregan v Sachs, 65 AD3d 101, 108-109 [1st Dept 2009]; Bradley v Soundview Healthcenter, 4 AD3d 194 [1st Dept 2004]).
Dr. Zablow's argument that the opinions of plaintiff's expert were contradicted by evidence showing that plaintiff was instructed to follow up with him in two weeks is not persuasive. Dr. Zablow's expert did not address that evidence and the opinions of plaintiff's expert are not facially inconsistent with Dr. Zablow having instructed plaintiff to follow up with him. Contrary to Dr. Zablow's contention, plaintiff's affidavit raised an issue of fact as to [*2]whether the doctor discussed the results of the balloon occlusion test and the possibility of carotid artery occlusion with plaintiff before he was discharged. Viewed in the light most favorable to plaintiff, plaintiff's deposition testimony was that he did not remember having any conversation with the doctor who performed the procedures at WMC or discussing the procedures he underwent at WMC with anyone at that facility. That testimony did not contradict with his averments that he did not recall Dr. Zablow, and that at WMC he was never informed of the results of the balloon occlusion test or the possibility of treating his aneurysm by closing one of his arteries.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 16, 2020
CLERK