Matthew v DeRose (2024 NY Slip Op 00140)

Matthew v DeRose

2024 NY Slip Op 00140

Decided on January 11, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 11, 2024

Before: Kern, J.P., Oing, Singh, Kapnick, O'Neill Levy, JJ.

Index No. 31141/17 Appeal No. 1383-1384 Case No. 2023-00490, 2023-03229 

[*1]Alphonso Matthew, Plaintiff-Respondent,
v
Joseph DeRose, M.D., et al., Defendants, Montefiore Medical Center, Defendant-Appellant.

Yoeli Gottlieb & Etra LLP, New York (Susan Etra of counsel), for appellant.
Diamond and Diamond LLC, Brooklyn (Stuart Diamond of counsel), for respondent.

Appeal from order, Supreme Court, Bronx County (Michael A. Frishman, J.), entered on or about January 11, 2023, which, to the extent appealed from as limited by the briefs, denied defendant Montefiore Medical Center's (Montefiore) motion for summary judgment dismissing the medical malpractice claim against it, unanimously dismissed, without costs, as academic. Order, same court and Justice, entered on or about June 27, 2023, which, to the extent appealed from as limited by the briefs, granted, in effect, defendant Montefiore's motion to reargue the motion for summary judgment dismissing the medical malpractice claim and, upon reargument, adhered to the original order, unanimously modified, on the law, the motion granted insofar as the medical malpractice claim is based on the timing of the surgery and the timing of the installation of the distal perfusion catheter (DPC), and otherwise affirmed, without costs.
Insofar as the medical malpractice claim is based on an alleged delay in performing mitral valve surgery, it should be dismissed for lack of proximate causation. Montefiore's expert opined that even if the delay caused the patient's condition to worsen, it did not increase the risk of any perioperative complications, including air embolism and pulmonary hypertensive crisis. Such complications were the most likely causes of the patient's cardiac arrest, which was the source of his other injuries. Although plaintiff's expert opined generally that the delay caused the patient's "condition to deteriorate, and contributed to a worse outcome," he did not address Montefiore's expert's specific opinion that it did not increase the risk of perioperative complications, even though he agreed that it was an air embolus that caused the patient's cardiac arrest (see Foster-Sturrup v Long, 95 AD3d 726, 728 [1st Dept 2012]). Because of our disposition of this issue, we need not reach the parties' arguments with respect to whether the delay in performing mitral valve surgery constituted a departure from the standard of care.
To the extent that the medical malpractice claim is based on an alleged delay in installing a DPC, it too should be dismissed for lack of proximate causation. Montefiore's expert opined that "ischemia of the extremities is a known risk" of the treatments the patient was receiving and "was an unavoidable consequence of the life-saving and longstanding use" of those treatments (see Henry v Duncan, 169 AD3d 421, 421 [1st Dept 2019]). The expert further asserted that installation of the DPC four hours earlier, when plaintiff asserts it should have been done, would not have made a difference because it takes more than four hours for irreversible tissue ischemia to develop, and, if the ischemia had developed as a result of that four-hour delay, it would have set in earlier. Although plaintiff's expert opined generally that the delay in installation caused the ischemia, he did not address Montefiore's expert's specific opinion regarding the timing [*2]of ischemia onset (see Foster-Sturrup, 95 AD3d at 728).
However, insofar as the medical malpractice claim is based on the installation of the DPC in a suboptimal location, dismissal for lack of proximate causation is not appropriate. Montefiore's expert opined that the DPC was appropriately placed in the dorsalis pedis artery and that "[t]here is no data to support the claim that an alternate placement outcome would have better results." Plaintiff's expert, on the other hand, offered the conflicting opinion that had the DPC instead been placed in the superficial femoral artery, it would have allowed for a larger catheter and greater blood flow in the proper direction, thus preventing ischemia. This conflict cannot be resolved on summary judgment (see Ayers v Mohan, 182 AD3d 479, 480 [1st Dept 2020]).
Because Montefiore has not appealed the motion court's findings with respect to the alleged misconduct of the defendant doctors in opting to repair rather than replace the mitral valve twice, failing to properly de-air the patient's heart, and failing to properly evacuate postoperative clotting, we need not address these issues.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 11, 2024