| **Calandra v Borges** |
| 2025 NY Slip Op 30434(U) |
| February 4, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 107172/2009 |
| Judge: Kathy J. King |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:        HON. KATHY J. KING                        PART                06

_Justice_

-----------------------------------------------------------------------------X

THOMAS M. CALANDRA,

                         Plaintiff,

                 - v -

NICOLE LYNN BORGES, LANCE JUNG, LOUIS EMMER,
THOMAS E FEALEY, FRANK SCAFURI, STATEN ISLAND
PHYSICIAN PRACTICE, P.C., ST. SAINT VINCENTS
CATHOLIC MEDICAL CENTERS OF NEW YORK, BRIDGE
REGIONAL HEALTH SYSTEM AKA RICHMOND
UNIVERSITY MEDICAL CENTER, CLOVE LAKES HEALTH
CARE AND REHABILITATION CENTER, INC.

                      Defendant.

-----------------------------------------------------------------------------X

| INDEX NO. | 107172/2009 |
|---|---|
| MOTION DATE | 01/04/2023, 01/04/2023 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 81

were read on this motion to/for                  JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79, 80

were read on this motion to/for                  JUDGMENT - SUMMARY        .

Upon the foregoing papers, and after oral argument, Defendants, Nicole Lynn Borges, M.D. ("Dr. Borges"), Lance Jung ("Dr. Jung"), and Staten Island Physician Practice ("SIPP") (Motion Seq. No. 02) move, pursuant to CPLR 3212, for an order granting Defendants summary judgment and dismissal of the Plaintiff's complaint in its entirety, as there are no triable issues of fact to present to a jury, and directing the Clerk to enter judgment accordingly.

Defendant Clove Lakes Health Care and Rehabilitation Center, Inc. ("Clove Lakes") (Motion Seq. No. 03), seeks an order granting summary judgment, pursuant to CPLR 3212, and

[* 1]

dismissing all claims alleged against it with prejudice, and directing the Clerk to enter judgment in Defendant's favor[1].

Plaintiff opposes the motions.

Thomas M. Calandra ("Plaintiff") initiated this action as Administrator of the Estate of Maryanne Calandra ("decedent"), who died on May 30, 2007. The Plaintiff's complaint sets forth two causes of action: medical malpractice, including vicarious liability by SIPP and Clove Lakes, and wrongful death.

The departures alleged by the Plaintiff involve care and treatment rendered to the decedent by the respective moving Defendants from November 27, 2006, through the date of her death on May 30, 2007. During that time, the decedent developed a wound to the posterior side of her right knee after wearing a brace, and was treated by Dr. Borges, who was assigned as her primary care physician by SIPP, and Dr. Jung, who performed a Surgical consult during an admission to Richmond University Medical Center ("RUMC"), from December 2, 2006, through December 8, 2006. The wound was also treated during an admission to Clove Lakes from December 8, 2006, through January 6, 2007. On January 6, 2007, the decedent was transferred back to RUMC, suffering from sepsis from the right leg wound. At that time, it was documented that the decedent had developed a Stage III decubitus ulcer to her right hip. The decedent was diagnosed with gangrene and necrotizing fasciitis of the right leg, and an above-the-knee amputation was performed on January 8, 2007. The decedent's condition continued to deteriorate, requiring multiple hospitalizations and surgeries, until her death.

---

[1] Motion Seq. No.02 and 03 are consolidated for disposition.

**107172/2009 CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN** **Page 2 of 12**
**Motion No. 002 003**

2 of 12

[* 2]

Plaintiff claims that Defendants SIPP and Drs. Borges and Jung, who were employees of SIPP, departed from generally accepted standards of medical care in failing to monitor, and timely and properly treat the decedent's right leg abscess.

Plaintiff also alleges that Defendant Clove Lakes departed from generally accepted standards of care by, inter alia, failing to timely and properly evaluate, monitor, and treat the decedent's right leg wound; failing to provide decedent with proper nutritional support; and allowing multiple decubiti to develop and progress, including a Stage III ulcer to the decedent's right hip. Plaintiff asserts that the alleged departures caused the decedent's injuries including, inter alia, infection, necrotizing fasciitis, gangrene, right leg above-the-knee amputation, sepsis, and ultimately death.

## THE INSTANT MOTIONS

A proponent of a summary judgment motion must make prima facie showing of entitlement to judgment as a matter of law by submitting admissible evidence that demonstrates the absence of material issues of fact that would require a trial (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). In a medical malpractice action, a movant must provide evidentiary proof in the form of expert opinions and factual evidence establishing that the defendant complied with accepted standards of medical care and practice, obtained informed consent; and/or the defendant's conduct was not a proximate cause of Plaintiff's alleged injuries (*see* N.Y. Public Health Law § 2805-d; *see also Alvarez*, 68 NY2d at 325). To satisfy the burden on a motion for summary judgment, a Defendant must address and rebut specific allegations of malpractice set forth in the Plaintiffs' bill of particulars (*see Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043 [2d Dept 2010]; *Grant v*

107172/2009 CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN
Motion No. 002 003
Page 3 of 12

3 of 12

*Hudson Val. Hosp. Ctr.*, 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

Once the Defendant establishes prima facie entitlement to judgment as a matter of law, the burden shifts to the Plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and opining that the Defendant's acts or omissions were a competent producing cause of the Plaintiff's injuries (*see Roques v Noble*, 73 AD3d 204, 207 [1st Dept 2010]; *Landry v Jakubowitz*, 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski*, 57 AD3d 856 [2d Dept 2008]).

### SUMMARY JUDGMENT AS TO DRS. BORGES AND JUNG AND SIPP (MOTION SEQ. NO. 02)

In support of their motion, Drs. Borges and Jung, and SIPP submit the affirmation of Dr. Bruce Farber ("Dr. Farber"), a board-certified Internal Medicine and Infectious Disease physician. Based upon his review of the pleadings, relevant medical records, and deposition testimony, he opines with a reasonable degree of medical certainty, that the Defendants did not depart from the standard of care in treating the decedent, and that no act or omission by the Defendants proximately caused decedent's injuries and death. Dr. Farber opines that the decedent's alleged complaints were not caused by the treatment rendered by Drs. Borges and Jung, and were likely caused by her numerous co-morbidities, including uncontrolled type II diabetes, chronic obstructive pulmonary disease, hypercholesteremia, smoking and a prior stroke. Dr. Farber opines that there was no evidence of gangrene, necrotizing fasciitis, decubitus ulcers or sepsis while decedent was under the care of Drs. Borges and Jung.

Dr. Farber opines that Dr. Borges properly evaluated and treated the decedent's leg wound by providing wound care, counseling decedent on managing her diabetes, and continuing antibiotic therapy which had been prescribed by a different medical provider one day prior. He

107172/2009  CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN
Motion No.  002 003

Page 4 of 12

4 of 12

further opines that Dr. Borges made well documented assessments, and timely, promptly, and appropriately referred decedent to a neurologist, podiatrist, and nutritionist for follow-up care, and to Dr. Jung for more extensive wound care and treatment. Dr. Farber notes Dr. Borges' very limited involvement in the decedent's care, which occurred on two occasions – November 13, 2006, and November 27, 2006.

Dr. Farber opines that Dr. Jung's involvement in the decedent's care involved only one examination as a Surgery consult on December 3, 2006, and in that capacity, he reviewed prior care, and timely and appropriately examined decedent's right leg. Upon examination, Dr. Jung noted right leg cellulitis, a superficial ulcer on the posterior knee, right calf tenderness, a faintly palpable right distal pulse, and an elevated white blood count. He discussed her condition with the health care team and ordered a stat venous duplex to rule out a deep vein thrombus. Dr. Jung was never called for further consultation and appropriately understood decedent to be under the care of specialists in Infectious Disease, Vascular Surgery, and Internal Medicine. Dr. Farber opines that in Dr. Jung's role as a Surgery consult, his care and treatment of the decedent's right leg met the applicable standard of care.

Dr. Farber opines that SIPP acted within the appropriate standard of care, and that no care rendered through SIPP proximately caused any of the alleged injuries by the decedent including her right leg amputation and ultimate death. Dr. Farber notes that while under the care of SIPP physicians, the decedent was given an appropriate course of antibiotics for an adult patient with a possible emergent skin infection, was advised of the possible complications of this wound given her co-morbidities and was provided with a multitude of referrals to additional providers to address this right leg wound. He indicates that the decedent's care and treatment was extensively

107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN
Motion No.  002 003

Page 5 of 12

5 of 12

documented by SIPP physicians at each presentation and that decedent's failure to follow-up with additional providers and physician advice was not medical negligence by SIPP.

In further support of their motion, Defendants submit the affirmation of Dr. George Todd ("Dr. Todd"), board certified in Vascular Surgeon, who opines to a reasonable degree of medical certainty, that the care and treatment provided to the decedent by Defendants Drs. Borges and Jung and SIPP was appropriate and within accepted standards of care, and that no act or omission by the Defendants proximately caused the decedent's alleged injuries or death. Dr. Todd opines that Dr. Borges properly tested the decedent for any emergent ambulatory problems, ordered laboratory studies and x-rays of the decedent's spine and right knee, and made appropriate specialist referrals. Dr. Todd concurs with the opinion of Dr. Farber that Dr. Borges appropriately maintained the decedent on antibiotic therapy, provided wound care, and counseled the decedent about the dangers of skin irritation with uncontrolled diabetes.

Dr. Todd opines that Dr. Jung timely, properly, and appropriately advised the decedent's care team of his impression and recommendations upon consultation. Dr. Todd further opines that in his role as a Surgery consult, Dr. Jung acted within the standard of care in evaluating the decedent's right leg wound as superficial, and in maintaining the course of antibiotic therapy that had been in place prior to his examination of the decedent. He opines that Dr. Jung's role was to provide opinions from a General Surgery perspective, and that he appropriately relied on other team members to manage care and make relevant decisions concerning the decedent's treatment.

Dr. Todd opines that SIPP's care of the decedent in November and December 2006, was within the standard of care, and that decedent was given an appropriate course of antibiotics, was advised of the possible complications of the wound based on her co-morbidities and was given wound care and numerous referrals to specialists. Dr. Todd's opinion contradicts the claims in

107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN                    Page 6 of 12
Motion No.  002 003

6 of 12

plaintiff's Bill of Particulars which allege, in sum, that SIPP, Drs. Borges and Jung, and other non-party employees, was negligent in providing appropriate care to the decedent and allowed her leg wound to develop an infection, require an amputation, and eventually lead to death.

Based on the expert affirmations of Drs. Farber and George, the Court finds that Drs. Borges and Jung, and SIPP have established their prima facie entitlement to summary judgment as a matter of law based that they did not depart from good and accepted standards of care in treating the decedent's right leg wound and did not proximately cause the decedent's alleged injuries and death.

Since Drs. Borges and Jung, and SIPP have established their entitlement to summary judgment on Plaintiff's medical malpractice cause of action, summary judgment is also warranted as to the Plaintiff's wrongful death cause of action (*see Roques v Noble*, 73 AD3d at 206, quoting *Obregon v NY & Presbyt. Hosp.*, 2012 NY Slip Op 30681[U] [Sup Ct, NY County 2012], citing *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "When medical malpractice forms the basis of a wrongful death action, in establishing that he/she did not proximately cause the injuries alleged to have caused plaintiff's death, a defendant establishes prima facie entitlement to summary judgment as to the wrongful death action as well," (*Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]).

<u>**SUMMARY JUDGMENT AS TO CLOVE LAKES**</u>
<u>**(MOTION SEQ. NO. 03)**</u>

In support of its motion, Clove Lakes submits the affirmation of Dr. Norman Chideckel, a board-certified Surgeon, and a fellow of the American College of Wound Specialists who opines, to a reasonable degree of medical certainty.

Dr. Chideckel opines that the decedent's death was caused by the worsening status of her right lower extremity and related co-morbidities, which were present upon her transfer to Clove

Lakes, and not due to any acts or omissions on the part of Clove Lakes. He notes that upon arrival at Clove Lakes the decedent had a Stage I ulcer on the right posterior knee. He opines that the nursing staff consistently charted her vital signs, and blood glucose levels, and contacted the physician on call as needed concerning any abnormalities. Dr. Chideckel opines that the medical staff, including Dr. Thomas E. Fealey ("Dr. Fealey"), the Medical Director and Plaintiff's primary care physician at the facility,[2] made appropriate changes in wound care management to address the worsening condition of decedent's right leg wound by using specialized dressings and administering oral and/or intravenous antibiotics. He further opines that appropriate interventions were implemented to prevent further pressure ulcers from developing, including providing protective skin care and turning and positioning the decedent every two (2) hours, and that supplements and oral feedings were increased, among other things, to prevent nutritional deficiency. Dr. Chideckel notes that during her month-long admission, decedent had been afebrile, however in January 2007, when she became febrile and lethargic she was appropriately transferred to the hospital for further care and management.[3]

Defendant Clove Lakes has established its prima facie entitlement to summary judgment based on the record evidence and expert affirmation of Dr. Chideckel, which demonstrates that Defendant Clove Lakes did not depart from the standard of care in rendering care and treatment

---

[2] At his deposition, Dr. Fealey testified that during the time period at issue he was employed by Defendant Clove Lakes as the Medical Director of the facility, which Clove Lakes has not disputed.

[3] The Court shall not consider the supplemental expert affirmation of Dr. Chideckel since "[t]he purpose of a reply affidavit or affirmation is to respond to arguments made in opposition to the movant's motion and not to introduce new arguments or grounds in support of the relief sought" (*see Gelaj v Gelaj*,164 AD3d 878, 879 [2d Dept 2018]; *see also Matter of Kennelly v Mobius Realty Holdings LLC*, 33 AD3d 380 [1st Dept 2006]; (CPLR 2214). Contrary to Clove Lakes' contention, the Plaintiff's opposition and supporting expert affirmation do not raise new arguments or claims. Plaintiff's expert addresses allegations properly pled in the bill of particulars relating to Defendant's failure to take appropriate measures to prevent further decubitus ulcers from developing, such as the one on decedent's right hip.

**107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN**                                    **Page 8 of 12**
**Motion No.  002 003**

8 of 12

to the decedent's right leg; in implementing measures to prevent infection and the development of further decubitus ulcers; and in providing proper nutritional support to the decedent. Defendant Clove Lakes has also established, prima facie, that the departures alleged by the Plaintiff did not proximately cause the decedent's claimed injuries and death.

### PLAINTIFF'S OPPOSITION TO MOTION SEQ. O2 & 03

In opposition to the respective motions of the moving Defendants', the Plaintiff submits the expert affirmation of a board certified in Surgery and Vascular Surgery, whose name is redacted.[4] Expert A opines, to a reasonable degree of medical certainty, that the Defendants' care and treatment of the decedent did not comport with the standards of good and accepted medical practice and caused the decedent's alleged injuries and death.

As a threshold matter, the Court finds that the contention of Defendants Drs. Borges and Jung and SIPP, that the Plaintiff's expert is not qualified to render an opinion as a board-certified Surgeon and Vascular Surgeon, without merit. "A medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field; however, the expert must be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (*Kiernan v Arevalo-Valencia*, 184 AD3d 727, 729 [2d Dept 2020]). Thus, where a physician testifies outside of his or her area of expertise a proper foundation must be laid which supports the opinion rendered (*Id.*). Here, the qualifications of Expert A, as set forth in the affirmation, include having served as the medical director of a large wound center and treating hundreds of patients with pressure ulcers. According to the affirmation, Expert A also oversaw the wound care center's successful accreditation by the Joint Commission on Healthcare Accreditation. As such, the Court finds that

---

[4] Plaintiff has redacted the expert's name pursuant to CPLR 3101(d) and shall be referred to herein as Expert A.

**107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN**                    **Page 9 of 12**
**Motion No.  002 003**

9 of 12

a proper foundation has been laid, and Expert A is qualified to render an opinion as to the care and treatment rendered to the decedent by the moving Defendants.

Expert A opines that Dr. Borges departed from accepted standards of care in treating the decedent's right leg abscess on November 27, 2006, in that he failed to admit her to the hospital for treatment and possible surgical drainage or alternatively, failed to ensure that decedent was evaluated by a surgeon that day on an outpatient basis. The Plaintiff's expert opines that Dr. Jung departed from the standard of care when treating the decedent on December 3, 2006, by failing to debride or drain the right leg wound to prevent further progression of the infection, and failing to continue evaluation and treatment of the decedent until the right leg abscess was resolved. Expert A further opines that Dr. Jung departed from the standard of care on December 18, 2006, when he saw the decedent on an outpatient basis, by failing to properly evaluate the decedent's right leg wound, which required readmission to the hospital for intravenous antibiotics and surgical intervention.

Expert A opines that Defendant Clove Lakes departed from accepted standards of care in: 1) failing to measure the depth of the wound to determine whether deep tissue and/or bone was infected; 2) failing to have the decedent examined and treated by a wound care physician; 3) failing to order intravenous antibiotics and treat the wound with the proper topical ointment; 4) failing to obtain a surgical or vascular consult; 5) failing to implement measures to prevent decubitus ulcers from developing, such as turning and positioning the decedent every two hours; and 6) failing to provide decedent with proper nutritional support.

The Court finds that Plaintiff, in opposition, has raised triable issues of fact based on the affirmation of Expert A that preclude a grant of summary judgment as to whether the moving Defendants, Drs. Borges and Jung, SIPP and Clove Lakes departed from the standard of care in

107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN
Motion No.  002 003

Page 10 of 12

10 of 12

rendering care and treatment to the decedent, and whether such departures caused the decedent's alleged injuries and wrongful death. It is well-settled that conflicting expert opinions in a medical malpractice claim cannot be resolved on summary judgment (*see Matthew v DeRose*, 223 AD3d 474, 476 [1st Dept 2024]; *see also Ayers v Mohan*, 182 AD3d 479, 480 [1st Dept 2020]).

Specifically, Plaintiff's expert affirmation raises issues of fact as to whether Defendant Dr. Borges, departed from the standard of care in treating the decedent's leg abscess on November 27, 2006, by failing to ensure that the decedent was evaluated by a surgeon on an outpatient basis or alternatively, by failing to admit her to the hospital for possible surgical drainage on that date. As to Dr. Jung, Plaintiff has raised issues of fact concerning whether he departed from the standard of care when treating the decedent on December 3, 2006, by failing to debride or drain the right leg wound and by failing to continue evaluation and treatment of the right leg wound; and on December 18, 2006, by failing to admit the decedent to the hospital for intravenous antibiotics and surgical intervention.

Based on the Court's determination that Plaintiff has raised issues of fact as to whether SIPP's employees, Dr. Borges and Jung, departed from accepted standards of care, questions of fact also exist as to whether SIPP is vicariously liable for their acts and/or omissions (*see Ciceron v Gulmatico*, 220 AD3d 736, 738 [2d Dept 2023] [holding that "[i]n general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment…"]).

As to Defendant Clove Lakes, the Court finds that Plaintiff has raised issues of fact as to whether Defendant Clove Lakes is liable for the acts or omissions of its employee Dr. Fealey, for departing from the standard of care by, among other things, failing to properly evaluate the right

107172/2009 CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN Page 11 of 12
Motion No. 002 003

11 of 12

leg wound; failing to obtain appropriate consults; failing to have a wound care physician examine and treat the decedent; failing to properly treat the infection; and failing to take appropriate steps to prevent the development of further decubitus ulcers.

The Defendants' remaining contentions are without merit and shall not be addressed by the Court.

Accordingly, it is hereby

**ORDERED,** that the motion of Defendants Dr. Borges, Dr. Jung, and SIPP (Motion Seq. 02) are denied; and it is further

**ORDERED,** that the motion of Defendant Clove Lakes (Motion Seq. 03) is denied; and it is further

**ORDERED**, that a settlement conference is scheduled for April 1, 2025, at 2:30 p.m.

| 2/4/2025 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | | |
| **CHECK ONE:** | ☐ CASE DISPOSED | | X NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | X DENIED | ☐ GRANTED IN PART | ☐ OTHER | |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |

**107172/2009   CALANDRA, THOMAS M. vs. BORGES, NICOLE LYNN**
**Motion No.  002 003**

Page 12 of 12